UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANTHONY D. HENDERSON,** | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-CV-1966 (RWR) |
| **ANTHONY A. WILLIAMS, et al.,** | : |
| Defendants. | : |

**DEFENDANTS' REPLY TO THE PLAINTIFF'S OPPOSITION TO THE PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Mayor Anthony Williams and the District of Columbia, by and through undersigned counsel, hereby submit this Reply to the plaintiff's Opposition to the defendants' Partial Motion to Dismiss First Amended Complaint. The basis for the defendants' Motion was three-fold: 1) a suit against the Mayor in his official capacity is unnecessarily duplicative of the suit against the District; 2) the plaintiff did not timely file his Title VII claim against the District; 3) the First Amended Complaint's Title VII claim does not relate back to the original Complaint.

In his Opposition, the plaintiff argued: 1) that the original Complaint was timely filed; 2) the First Amended Complaint's Title VII claim relates back to the original Complaint; and 3) the interests of justice should result in the Court permitting the plaintiff to amend his Complaint.

The defendants herein respond: 1) the plaintiff does not challenge the dismissal of Mayor Williams from this action; 2) the plaintiff did not successfully refute defendants' contention that the First Amended Complaint changes the party defendant; 3) the plaintiff fails to rebut defendants' contention that the First Amended Complaint does not relate back; and 4) the plaintiff did not assert a claim in the First Amended Complaint under the D.C. Human Rights

1

Act ("DCHRA"). For all of these reasons, the defendants respectfully request that the Court dismiss the plaintiff's entire First Amended Complaint against Mayor Williams with prejudice and that the Court dismiss the plaintiff's Title VII claim (and any alleged DCHRA claim) against the District with prejudice.

1. **THE PLAINTIFF DOES NOT CHALLENGE THE DISMISSAL OF MAYOR WILLIAMS.**

In its Motion, the District argued that the suit against Mayor Williams should be dismissed as duplicative. (Motion at 4.) At no point in the Opposition does the plaintiff challenge defendants' arguments regarding the dismissal of Mayor Williams from this action. Therefore, the Court should treat this issue as conceded and dismiss all claims against Mayor Williams with prejudice.

2. **THE PLAINTIFF DID NOT SUCCESSFULLY REFUTE DEFENDANTS' CONTENTION THAT THE FIRST AMENDED COMPLAINT CHANGES THE PARTY DEFENDANT FROM DCPS TO THE DISTRICT.**

The plaintiff contends that "by filing a Title VII Complaint against District of Columbia Public Schools, consistent with the terms of the 'Right to Sue' Letter, it merely misnamed the proper party to be sued." (Opposition at 9-10.) However, the plaintiff's actions belie that contention that he misnamed the party or that it was a "mere slip of the pen." (Opposition at 10, *quoting*, *Zuurbier v. MedStar Health, Inc.*, 2006 D.C. App. LEXIS 149 *13.) In addition to the arguments proffered by the defendants in the original Motion to Dismiss, the defendants respond as follows:

    a) **Plaintiff's Reliance on EEOC Instructions is Not a Valid Defense for Suing DCPS, not the District.**

The plaintiff contends that he relied on the EEOC right to sue letter, which allegedly directed him to file a lawsuit "against the Respondent" named in the EEO documents, *i.e.,*

2

DCPS. (Opposition at 7.) However, the language in the EEO letter is immaterial to whether the plaintiff actually brought suit against the right party. First, it is unclear who designated DCPS as a Respondent in the administrative process. In fact, it is likely that the *plaintiff himself* designated the entity named as a "Respondent" in the EEOC Charge of Discrimination. Even if it was not the plaintiff that identified the Respondent, the District is not responsible for naming Respondents in the EEO case or for directing the plaintiff to sue the named Respondent in the right to sue letter.

The plaintiff complains in his Opposition, "Not once during the entire 21-month EEO process was Plaintiff informed by the Respondent, the District of Columbia, or anyone else that the proper named party for a civil suit would be the District of Columbia, rather than the actual named respondent, DCPS." (Opposition at 8.) However, neither the District nor any District entity involved in the administrative process is under any obligation to inform the plaintiff of how to proceed with his case. It also is likely that DCPS was the proper respondent for purposes of mediation or other administrative, out-of-court resolution. This does not make DCPS a proper party for litigation purposes. More importantly, as a matter of law, despite the identification of the respondent in the administrative process, it is undisputed that DCPS is not *sui juris* in a civil court. Only those agencies empowered by statute to sue or be sued are *sui juris*. DCPS simply cannot be a proper defendant.

      **b) The Plaintiff's Actions Before January 24, 2006 Demonstrate that He Intended to Sue DCPS, not the District.**

The plaintiff contends that it "was not unreasonable for Plaintiff to assume that suing the District of Columbia Public Schools was essentially equivalent to suing the District of Columbia." (Opposition at 12.) However, the plaintiff offers no citation to statute or case law to support this "essentially equivalent" argument. As indicated in the original Motion, this is not a

3

case where the plaintiff served the District, consistent with F.R.C.P. 4(j)(2), but incorrectly named DCPS in the Complaint. Here, the plaintiff named DCPS, served only general counsel for DCPS, did not make any attempt to serve the District consistent with F.R.C.P. 4(j)(2), and still continues to assert that DCPS was properly served. In fact, the plaintiff goes to great lengths in his Opposition to demonstrate his efforts to effect service on DCPS. It is not a "mere slip of the pen" that DCPS was named. Rather, it is apparent that the plaintiff intended to sue DCPS and DCPS only.

### c) The Plaintiff Was on Notice as of January 24, 2006 that DCPS was Not *Sui Juris* and He Failed to Take Any Timely Action to Remedy that Defect.

Finally, the plaintiff cannot rely on his confusion regarding DCPS to excuse his failure to name the District, because any mistaken reliance or misunderstanding held by plaintiff's counsel with regard to the proper identity of the defendant was resolved when undersigned counsel spoke with him on January 24, 2006. Undersigned counsel contacted plaintiff's counsel, as a courtesy, on January 24, 2006, in advance of the expiration of the 120-day time limit. It was at this point that the plaintiff had notice that DCPS was not "essentially equivalent" to the District, that DCPS was not *sui juris* and the District was the proper party to be named. Having such notice, and informing counsel that he would amend the complaint, he had ample opportunity (*i.e.,* several days) to file timely a First Amended Complaint or to ask the Court for additional leave prior to the expiration of the 120-limit prescribed in F.R.C.P. 4(j). Here, plaintiff's counsel did not choose either option. The plaintiff concedes "that the Mayor and the Attorney General were not formally served with the amended complaint until after February 1, 2006." (Opposition at 15.) Instead, despite having such knowledge of the defects in his Complaint, the plaintiff's counsel did not take any action in this matter until two months later, on March 23, 2006, when the First Amended Complaint was eventually filed and then, later, served on the District. Such delays should not be rewarded by this Court.

### d) The Plaintiff's Cited Cases are Distinguishable from the Instant Case.

The plaintiff has cited two primary cases in his Opposition. However, both are distinguishable from the instant matter. In *Parker v. District of Columbia*, 2002 U.S. Dist. LEXIS 26663, both the facts and the procedural posture of the case are different. There, the key issue was whether the Court would permit a second amendment of the complaint, which would substitute the District for the *non sui juris* entity. The Court's decision that the amended complaint would relate back was largely reliant on its finding that "the defendant concedes that it was always aware of the plaintiff's intention to sue the District of Columbia." *Id.* at **5. Here, in stark contrast, the District makes no concession. In fact, until the District was served in accordance with F.R.C.P. 4(j)(2), in March 2006, it had no notice of the claim against it. That undersigned counsel was aware of the procedural defects in the original Complaint, and spoke to counsel about in on January 24, 2006, cannot satisfy the requirement of notice to the Mayor of this lawsuit. Moreover, according to the Court record in *Parker*, the District did not oppose the plaintiff's request to have the second amended complaint relate back to the original complaint. *Id.* at **6. In this case, the District has opposed such a request. The *Zuurbier* case cited by Plaintiff also is distinguishable. *See supra* at Part 3(a).

The *Arrington* case cited by the defendants in the original Motion most closely resembles the factual and procedural posture of the instant case. *Arrington v. District of Columbia,* 673 A.2d 674, 680 (D.C. 1996). Moreover, the *Arrington* Court followed Supreme Court precedent in its analysis. Not only was the *Arrington* court dealing with a case involving a plaintiff who named first D.C. General Hospital as a defendant, then amended the complaint to name only the District, but the plaintiff there only attempted to serve D.C. General Hospital. The *Arrington*

5

plaintiff did not attempt to serve the District. These facts are virtually identical to the facts in the instant case.

In *Arrington*, the Court found that the amended complaint changed the party. This Court should apply the same analysis and conclude that the First Amended Complaint here also changed the party. The Court therefore must address the question of whether the First Amended Complaint relates back to the filing of the original Complaint.

3. **THE FIRST AMENDED COMPLAINT DOES NOT RELATE BACK BECAUSE THE DISTRICT WAS NOT ON NOTICE OF THIS LAWSUIT BEFORE IT WAS SERVED.**

As described in the defendants' Motion to Dismiss, the First Amended Complaint cannot relate back because the First Amended Complaint changes the party and the District was not notified within the time frame for service. The District, therefore, would be prejudiced if it has to maintain a defense on the merits. In the absence of proper service or any constructive notice, the Mayor or the District did not know, nor could they have known, that they would have been made a party absent the plaintiff's mistake.

   a) **The Plaintiff's Reliance on *Zuurbier* is Misplaced Because that Case is Factually and Legally Distinguishable.**

The plaintiff's citation to *Zuurbier v. MedStar Health, Inc.*, 2006 D.C. App. LEXIS 149, is distinguishable from the instant case. In *Zuurbier*, which arose out of a claim under the DCHRA, the plaintiff, a doctor, filed her original Complaint against Medstar Health, Inc. (MSHI), instead of the appropriate subsidiaries that operate Georgetown University Hospital. *Id.* at *1-9. Subsequently, the plaintiff filed a First Amended Complaint, joining these subsidiaries––MedStar Georgetown Center, Inc. and MedStar Georgetown Medical Center The Limited Liability Company—as defendants. *Id.* at *3.

6

The District of Columbia Court of Appeals determined that the plaintiff's First Amended Complaint (and subsequently filed Second Amended Complaint) related back to the initial Complaint. *Id.* at *7. In so holding, the Court relied on several key factors. The Court noted that "the MedStar entities and subsidiaries are organized in a very confusing manner." *Id.* at *9. The Court also noted that the plaintiff had served the proper address, because MSHI's address was the location of Georgetown University Hospital. *Id.* at *9. Finally, the Court relied on the fact that the defendants have the "same agent of service for process, and they are all represented by the same counsel." *Id.* at *12. Based on all of these reasons, the *Zuurbier* Court concluded that:

> the sole reasonable explanation of the initial decision by Dr. Zuurbier to sue only MSHI is that her attorneys were operating under a mistake of fact as to the identity of the MedStar entity that was operating Georgetown University Hospital. This explanation is also consistent with, and reinforced by, the attribution of the Reservoir Road address to MSHI in the original complaint.

*Id.* at *11.

*Zuurbier* is distinguishable for three reasons. First, as a legal matter, the *Zuurbier* Court was interpreting this case under the DCHRA and the Superior Court rule regarding doctrine of relation back. The instant case addresses claims pursuant to Title VII and only the Federal Rules are binding. Second, the organization of the MedStar defendants is not akin to the relationship between the District and DCPS. Very clearly, DCPS is an agency of the District, and as such, is not *sui juris*. In this case, the plaintiff does not claim he was confused about the organizational process. In fact, the plaintiff's discussion about reliance on EEOC documents and service on DCPS demonstrates that he intended all along to only serve DCPS. Moreover, once plaintiff's counsel was put on notice as of January 24, 2006, any subsequent confusion is not credible. Third, ultimately, the *Zuurbier* court allowed the subsequent complaints to relate back because the plaintiff had the right address but had the wrong corporate name. In this case, the plaintiff

7

had the wrong address and had the wrong corporate entity. Finally, and perhaps most importantly, in *Zuurbier*, the plaintiff actually served all defendants with the original complaint, because they had the same agent for service of process. Here, the District was not served with the original Complaint. It therefore did not have proper notice of the claim. *See supra* part 3(b).

Simply, the plaintiff's error is not a mistake of fact, as in *Zuurbier*. It is disingenuous for the plaintiff to argue that he did not know the DCPS was not a proper party, when it is undisputed that he had such knowledge as of January 24, 2006. Moreover, unlike in *Zuurbier*, the issue of notice is significant to the Court's analysis of whether the First Amended Complaint can relate back because the District was not served and therefore had no notice of the claim against it. Based on the information that the Court has before it, the Court should conclude that the First Amended Complaint cannot relate back to the filing of the original Complaint for these reasons.

### b) Neither the District, the Mayor Nor any Agent for Service of Process had Notice of the Case Against the District Until March 2006.

Unlike in *Zuurbier*, the issue of notice is paramount in this case. The plaintiff concedes "that the Mayor and the Attorney General were not formally served with the amended complaint until after February 1, 2006." (Opposition at 15.)[1] By the plaintiff's own admission, then, the Court should find that the District did not have notice pursuant to F.R.C.P. 15(c).

Yet, the plaintiff asserts that the defendant had notice of the First Amended Complaint against it. To support this assertion, the plaintiff first claims that the defendant (*i.e.*, the District) "received the original complaint anyway, regardless of which party was named in the caption." (Opposition at 13.) However, there are no facts to support the assertion that the District received the

---

[1] Notably, had the plaintiff properly amended the Complaint and served the District with the First Amended Complaint within the 120 days permitted in the rules, or even sought more time from this Court to do so, the defendants would not be in a position to file a Motion to Dismiss.

8

complaint. All the plaintiff can say is that undersigned counsel has the document, which is not in dispute. Yet, undersigned counsel's receipt of any document in a case is not the equivalent of service on the District in compliance with F.R.C.P. 4(j)(2), nor does it mean that the District itself (*i.e*., the Mayor or any of its/his agents for service of process) had any notice. Alternatively, the plaintiff asserts that "the Defendant was fully aware of Plaintiff's original complaint." (Opposition at 15.) Again, notice to DCPS general counsel or undersigned counsel cannot be attributed to the District or to the Mayor or any of its/his agents for service of process. The plaintiff cannot cite to any case law for the proposition that receipt by or knowledge of an attorney, not designated an agent for service, satisfies the notice requirement.

As described in the original Motion, the Court should follow the analysis of the *Arrington* court, which concluded that since the District did not have any notice, the amended complaint should not relate back. Based on the information before it, this Court cannot conclude that, "within the period provided by Rule 4(m) for service of the summons and the complaint," the District "received such notice" and "knew or should have known that, but for a mistake concerning the identity of the proper party," the action would have been brought against the District. Therefore, the plaintiff's Title VII claim in the First Amended Complaint cannot relate back to the filing of the original complaint.

### c) The District Would Be Prejudiced if It Has To Defend this Case.

The plaintiff's failure to give any notice to the District (i.e., the Mayor) about this case within 90 days of receiving the "Right to Sue" letter prejudices the District because it could result in the District's inability to preserve evidence. The 90-day statute of limitations imposed by 42 U.S.C. § 2000e-5(f)(1) is intended to protect defendants from having to litigate stale lawsuits. It also provides ample opportunity for the plaintiff to ensure that he/she has taken the

proper steps in his/her suit. In this case, the plaintiff had 90 days to file a suit and name the proper party. In addition, after counsel's conversation on January 24, 2006, the plaintiff still had an opportunity to amend the Complaint and properly name and serve the District within the time frame provided under the rules. The plaintiff's failure to act timely prejudices the defendants.[2]

4. **THE PLAINTIFF DID NOT ASSERT A CLAIM UNDER THE D.C. HUMAN RIGHTS ACT.**

The plaintiff states in his Opposition that he "intended at all times to sue his actual employer, for employment discrimination under Title VII, the D.C. Human Rights Act, and the Equal Pay Act." (Opposition at 11.) However, the plaintiff never mentions the D.C. Human Rights Act ("DCHRA") or its statutory section in the First Amended Complaint. Accordingly, there is no DCHRA claim included in the First Amended Complaint. If the plaintiff wishes to add a claim under the DCHRA, he should be required to file a Motion to Amend the Complaint and the defendants would have an opportunity to respond in writing.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Holly M. Johnson /s/*
HOLLY M. JOHNSON [476331]
Section Chief
General Litigation Section III

---

[2] The Plaintiff criticizes the defendants' claim of prejudice with their request for additional time to file an Answer to the EPA claims. However, these positions are not inconsistent. The District is able to preserve evidence, while also requesting a brief extension of time to file an Answer.

*/s/ Dana K. DeLorenzo /s/*
DANA K. DELORENZO [468306]
Assistant Attorney General
441 4th Street, N.W., 6S61
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
Dana.delorenzo@dc.gov